JAMES AND THOMAS TAYLOR *v.* JOHN McDONALD.

Where one of several contractors is a resident of the state, and the others non-residents, an attachment can not be sued out and maintained.

THIS was a writ of error adjourned here for decision from Jefferson county.

The record shows that on May 23, 1826, the defendant in error sued out of the court of common pleas of Jefferson county a writ of attachment against William H. Hayes, John Pheeham, David Adams, Thomas Taylor, William Fitsrammons, and James Taylor, as non-resident debtors. To the writ the sheriff returned he had attached a section of land, the property of James Taylor and Thomas Taylor; at the return term the first default was entered, and an order of notice, agreeably to the provisions of the statute. At August term, 1826, the second default was entered, and the notice proved. On the 14th of September following a declaration was filed, reciting the issuing of the writ, the sheriff's return, and then avers, "that, whereas, Thomas and James Taylor, together with the said Hayes, Adams, Pheeham, etc., trading under the name and firm of the Pittsburg Iron Company," etc. At November term a third default was taken. The defendants, without putting in bail, pleaded in abatement, in substance, that Pheeham was, at the time the writ was sued out, and still is, a resident of Ohio, to wit: at Wellsville, in the county of Columbiana. The truth of the plea is verified by the oaths of the defendants in an affidavit subjoined.

General demurrer to the plea and joinder.

At October term, 1827, the plaintiff says he will not further prosecute his suit against Pheeham, because he is ascertained to be a resident of the state. And thereupon the court adjudged the plea in abatement insufficient and *respondeat ouster*. *On Decem- [150 ber 31, 1827, the defendants, except Pheeham, pleaded *non assumpserunt*, and filed an affidavit of its truth, etc. Subsequently, on motion of the plaintiff, and it appearing to the court that no property of the defendants, except Thomas and James Taylor, had been attached, leave was given to enter a *nolle prosequi* against all except the Taylors. By agreement either party had leave to amend. On May 15, 1828, the plaintiff filed an amended declaration, reciting all the previous proceedings, and further, " that, whereas, the

137

said Thomas and James Taylor, together with Hayes, Pheeham, Adams, etc., late partners, etc., promised, etc." To the amended declaration the defendants pleaded the general issue, and filed an affidavit. The defendants moved to strike the cause from the docket, because the writ issued on a joint liability, and the plaintiff, as to several of the defendants, has dismissed his suit. The motion was overruled. The defendants also moved for a nonsuit, which was overruled. The jury impanneled returned a verdict for the plaintiff below of one thousand four hundred and forty-seven dollars and thirty-one cents. Judgment upon the verdict and an order for the sale of the property attached. Among the many errors assigned, one was that the court ought to have adjudged the plea in abatement as sufficient, and the judgment of the court being founded upon this error, it is deemed unnecessary to notice the others.

MARSH, for plaintiffs in error:

In arguing the validity of the plea in abatement, the counsel for the plaintiffs in error do not consider it necessary to determine what the law would have been, had the attachment, in this case, been issued against non-residents only. The case would certainly have been entirely different, in every aspect in which we can view it, had the fact that a resident of this state was one of the partners in the Pittsburg Iron M. Company been first disclosed by a plea in abatement, for want of making all the members of the company defendants in the writ. Here the writ is issued against the property of one who, by the subsequent pleadings, is admitted to be a resident of this state. The affidavit, on which the writ issued, must have stated that Pheeham was a non-resident.

151] *This is a statutory action, and the terms of the statute must be strictly complied with. 2 Ohio, 229. This being an action on a joint contract, must be sustained against all those who are made defendants, and who are set forth in the declaration as joint contractors. The parties have a right to insist on performing the contract in the same manner in which it was made. Any one or more, who are sued, have a right to insist on the other joint contractors being brought before the court, to assist in the defense. Hence the plea in abatement that another, not sued, contracted jointly with the defendant. Clearly, then, if the one defendant, when sued alone, could compel the calling in the other

Taylor *v.* McDonald.

to defend with him, the plaintiff can not, when he comes into court, dismiss one of two defendants, sued on a joint contract, without dismissing both. As to the idea of bringing him back again, by a plea in abatement, it is idle ; for of what use to *compel* the plaintiff to call in a party whom he may again dismiss the next day? But it is considered unnecessary to defend the position that, in an action on a joint contract, *commenced* by personal process, the plaintiff, if he found that he had made too many persons defendants, could not *non pros.* his suit as to a part of the defendants, and go on as to the others. 1 Com. Dig. 80 ; 1 Wilson, 89 ; 1 Saunders, 207, note ; 2 Tidd, 632 ; 5 Burr. 2614. But it will, perhaps, be contended that this statute has changed the law in that respect, and that the defendants could not plead in abatement the non-joinder of other joint contractors in a writ of attachment under this statute. The statute does not appear to us to have made any *alteration* in the law in this respect; but even if it had, it is conceived that as this case is it could make no difference. The fact of the liability of Pheeham. is shown by the plaintiff himself, by his affidavit, and writ, and declaration, and it is only the fact of residence which is disclosed by the plea. The plaintiff himself has brought him into court, and declared against him; and the contract being joint, he can not any more *non pros.* his suit, as to him alone, after appearance by the defendants, than if the suit was commenced by summons. The plea in abatement is clearly good as to Pheeham. This point was expressly decided in Hartshorn *v.* Wilson, 2 Ohio. Is it not, then, a good plea for the other *defendants?* It is conceived *that it is, for the reasons be-   [152 fore stated, and also for another reason. This statute clothes the court with limited and defined powers, which it can not exceed, but must strictly pursue. The court of common pleas, acting under this statute, sits as a court of limited jurisdiction. If any of the parties made defendants are not subject to the jurisdiction of the court in this form of action, the court *can not* take jurisdiction of the cause. Here one of the defendants was not liable to the attachment, and therefore the writ should have been quashed for want of jurisdiction. All the joint contractors make but one debtor. In the case of Strawbridge et al. *v.* Curtis et al., 3 Cranch, 267, the court expressly decided that to give a court of limited jurisdiction power to entertain jurisdiction where the interest is joint, each of the persons composing a party, plaintiff or

defendant, must be competent to sue, or liable to be sued, in that court. This authority is certainly decisive of the case before the court. I know the court will be told that the thirteenth section of the statute obviates this objection. It will be borne in mind by the court that this statute, creating a new *jurisdiction*, in derogation of the common law, is to be construed strictly. 2 Ohio, 229. The language of the thirteenth section of the act can not be extended beyond its plain and obvious import, to deprive the defendants of their right to plead in abatement the want of parties. The language is, that "the writ of attachment, provided for by this act, may be issued against the separate or joint estates, or both, of such joint debtors, or any of them." This is directory as to the form of the writ, with reference to the property to be attached only, and not as to who are to be made *defendants* to the action. This is manifest, from the consideration that the writ is to be in the alternative, to attach the property of the defendants, or that of any of them, or property of both descriptions. And it is submitted to the court that on a writ of attachment, issued, as this is, without any command to attach the several property of one or more of the defendants, the sheriff would not be justified in seizing any other than the property of the company, and that, in this *respect*, this attachment is not well executed. This section evidently contemplates that all the joint obligors or partners should be included in the writ, and that they must all be liable to 153] the attachment, *to authorize the writ to be issued against the *partnership* property, because, if any one of them is within the reach of personal process, the partnership property may be subjected by the ordinary process of the court, and extraordinary process shall never be resorted to but where the ordinary process is unavailable. If this view of the subject be correct, and it is thought that it will not be controverted, it must be *decisive* of the case.

J. C. WRIGHT, for defendant:

The appearance of the Taylors at the August term, 1828, or before, and their plea then, was, as to them, a waiver of all irregularity in the process and previous proceedings. It is a point well settled that appearance and plea to the action is an admission by the defendant that he is properly in court, and he is not allowed afterward to object prior irregularity, in proceedings whose only

Taylor *v.* McDonald.

object was to bring him into court to answer. As the general rule, it is presumed this rule will not be disputed. These proceedings are under the attachment law; and we must look to its provisions, and see if, in this respect, they vary the general rule, or create an exception from it.

The foundation of the proceeding in attachment is the absence of a debtor out of the jurisdiction of the court, either *absconding* or as *non-resident*. Upon affidavit by plaintiff that his "debtor is not a resident of the state," the writ issues to attach the lands, etc., of the debtor wherever found. It is a proceeding *in rem*, while *ex parte* as to the attached property, but may be changed to an adversary proceeding, at the option of the debtor. He may perfect an appearance by entering special bail to the action, or rendering himself in custody, and be held to plead; or he may do so without special bail, leaving the attached property instead of special bail; and whenever his appearance is perfected, either in one way or the other, he may *plead to the declaration*, and thenceforth the cause proceeds in the same manner as if the debtor had been brought into court on a *capias*, and had perfected his appearance, and plead to the declaration. Could he, in such a case, look back of the *narr.*, and plead to the writ in abatement? That will not be claimed. The statute confers *upon absconding [154 and non-resident debtors the right, without appearance, where the proceedings are *in rem*, to move to quash, or make objection to irregularities in the writ, etc.; but in such cases the objectors are regarded as mere *amici curia*, to inform the consciences of the judges in a case *ex parte*, where the proceedings are always *stricti juris*. But such is not the case at bar; it is adversary, and the defendant has plead to the declaration in bar. The defects in the writ are cured by such plea. The writ of error can only embrace errors in the declaration, subsequent proceedings, and judgment. If I am correct, and I think it clear, all objection to these proceedings, that the court erred in the plea in abatement, or in overruling the motion to quash the writ, are answered by the reply that they are anterior to the plea in bar. If the party had a right to the plea or motion, and the decision was adverse, he should have rested there, and prosecuted his writ of error, and not have waived those errors at the time, in the expectation of bringing them up again. This remark applies to the *non pros.* of the plaintiff, as to all the defendants in his original process but the Taylors; that

was prior to the filing the *narr.* against them alone, and waived by the plea to the *narr.*

M. D. COLLIER also submitted an elaborate argument for the plaintiff, upon points not touched in the opinion.

By the COURT:

We have recently decided that the statute, regulating attachments, has left the parties to the suit and the pleadings to the law governing the action in other cases. But another question is now to be determined, namely, whether in the proceeding against parties jointly liable, all the defendants must either have absconded, or be, at the time the affidavit was made, non-residents. The remedy by attachment exists principally *in rem.* The party, in contemplation of the statute, is not in court when his property is seized, and the notification, which is substituted for personal service, is generally ineffectual to give the debtor information of the pendency of the action. This proceeding gives the creditor an extraordinary advantage, at its inception, over the debtor. **155]** *Besides dispensing with personal service, the statute gives a lien upon the property of the defendant from the service of the writ. The property, if perishable, may be sold before the rights of the parties have been judicially determined, and is held in the custody of the law, to satisfy the judgment that may be recovered. The rights and credits of the debtor are also brought within the control of the creditor by this process. These very important consequences, which are unknown to our general course of jurisprudence, flow from this process. This remedy, being nearly *ex parte,* and not according to the course of the common law, ought not to be extended beyond the letter of the statute. Colwell, Adm'r, *v.* The Bank of Steubenville, 2 Ohio, 229. Where the creditor proceeds by attachment, the statute does not authorize him to dispense with the parties to the contract, either in the declaration or subsequent proceedings, and it is not in his power to omit one of two or more joint defendants, without incurring the danger of the suspension of his remedy, by a plea in abatement.

The court might be justified in extending the equity of the statute to a case like the one under consideration, if the creditor was wholly remediless at law, without such construction; but a less

Taylor *v.* McDonald.

dangerous and more just remedy, one in strict conformity with the general policy of our law, is given by the act " providing for the service and return of process in certain cases." This act provides that, when a writ is returned served upon one or more defendants, it shall be lawful for the plaintiff to file his declaration against the one in court, suggesting therein the return as to the other defendants, and proceed to judgment as in other cases. The defendants not served, if necessary, can be made parties to the judgment by *scire facias.* This statute furnished the plaintiff below with the ordinary means of securing and collecting the debt. It is no argument to say the process of attachment is more expeditious in creating a lien upon the defendant's property, which is at once taken into the custody of the law to be held subject to the future judgment. There can be neither justice nor equity, in furnishing one creditor with a lien upon the debtor's property, real and personal, from the service of the writ, and leaving another, with a claim perhaps more meritorious, *to the tardy [156 remedy of ordinary proceedings, and to bind the property by a judgment in his favor.

The remedy by attachment is an extraordinary proceeding, for the writ seizes and binds the property of the debtor before the claim of the creditor is judicially ascertained, upon the mere affidavit of an interested party.

It can not be tolerated, unless the creditor brings himself strictly within the provisions of the statute. It would, indeed, be a singular exposition of this statute, to give the creditor an action by attachment against an absent partner, without allowing the resident one even a day in court to controvert the justness of the plaintiff's demand. The partners being equally interested, in the consequence of the suit, there is an obvious fitness in permitting litigation with the one present rather than with him who is absent. The court will never proceed *ex parte,* or upon notice, which, in general, is not much better, unless it is the only alternative of the creditor. When there is another remedy, according to the course of the common law, although it may admit of more delay, or, in some respect, be less advantageous to the creditor, it ought to be pursued, especially if a contrary course would lead, in the nature of things, to uncertainty and often to injustice.

The court are clearly of opinion that a creditor is not authorized to resort to process of attachment, when there are joint liabilities,

143

without all the defendants are non-residents, or have absconded. So long as one joint contractor remains within the jurisdiction, who can be personally served with process, the creditor must seek his remedy in the mode pointed out by other statutes.

The court below, therefore, erred in overruling the plea in abatement of the defendant, for which the judgment is reversed.